FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

98 JUL 14 AM 9: 02

U.S. DISTRICT COURT
N.D. OF ALABAMA

LOUISE GALBREATH,                    )
                                     )
        Plaintiff                    )
                                     )        CIVIL ACTION NO.
    vs.                              )
                                     )        CV-97-AR-3203-M
JAMES MAJORS and AMELIA              )
MAJORS d/b/a THE MACHINE             )
SHOP,                                )

ENTERED

        Defendants

JUL 1 4 1998

### MEMORANDUM OPINION

Presently before the court is a motion for summary judgment filed by defendants, James and Amelia Majors doing business as The Machine Shop. Also before the court is a motion by *pro se* plaintiff, Louise Galbreath ("Galbreath"), to amend this court's February 24, 1998, scheduling order. In the above entitled action, Galbreath asserts various claims against the defendants. She alleges, *inter alia*, that the defendants are liable for copyright infringement, 17 U.S.C. § 101 *et seq.*, unfair competition, fraud and breach of contract. Galbreath claims that the defendants reneged on their oral contract with her and that they used her fully automated sewing machine bobbin winding device, which she invented, without her authorization. In support of their motion for summary judgment, the defendants contend that Galbreath is judicially estopped from asserting her claims because she filed for bankruptcy on November 18, 1996, without disclosing her interest in the invention, the then

pending patent application and her current legal claims.  Some of

these claims had accrued when she filed for bankruptcy and some

were contingent upon approval of the patent.  Defendants also

contend that District Court Judge Lynwood Smith's application of

judicial estoppel in a related case, *Galbreath v. Hamlet*, CV-97-

S-3051-M (April 14, 1998), necessitates this court's application

of that same doctrine, pursuant to issue preclusion theories.

This court agrees that summary judgment is appropriate as to

Galbreath, and all entities in privity with Galbreath, because

she has no standing to assert her claims.  The court will dispose

of the case by dismissing it <u>without</u> prejudice to the right of

the bankruptcy trustee, who has standing, to pursue Galbreath's

claims.  Given the court's disposition of Galbreath's substantive

claims, her motion to amend the scheduling order is moot.

## I. FACTS[1]

It appears that the circumstances which gave rise to the

present dispute began in September 1994, when Galbreath entered

into an agreement whereby the defendants were to duplicate her

fully automated bobbin winding machine.  *Compl.* ¶ 4.  Galbreath

apparently allowed the defendants to use a prototype of her, now

---

[1] The court has an obligation to view the facts in the light most
favorable to the plaintiff.  *Swint v. City of Wadley, Ala.*, 51 F.3d 988, 995
(11th Cir. 1995).  The court notes that some of the "facts," as alleged by
Galbreath, are found in her unverified complaint.

2

patented, invention for purposes of building the machine, *Compl.*, Ex. F, at pg. 2, which they agreed to complete in two to three weeks. *Compl.* at pg. 1. At some point, it appears that the parties then agreed that the defendants would build ten additional bobbing winding machines, to be used by Galbreath's company, Sew Fast Products, Inc. ("Sew Fast"). *Compl.*, Ex. F. at pgs. 2, 4.

On January 1, 1995, Galbreath sold her invention and the patent rights to Sew Fast, for $10.00. *Doc.* 9, Ex. J-1. Galbreath is the president, Chairperson of the Board of Directors and 100% shareholder of Sew Fast, a ready wound bobbin supply company, which she operates out of her home.[2] *Doc.* 22 at pg. 37; *Doc.* 21 at pgs. 38, 40. Despite the assignment agreement, Galbreath retained the right to prevent Sew Fast from assigning the patent rights to a third party. *Doc.* 9, Ex. J-1. In addition, Galbreath retained a reversionary interest in the patent rights, subject to the insolvency or bankruptcy of Sew Fast. *Id*. The agreement provided that the Sew Fast Board of

---

[2] The record indicates that Galbreath held a 100% interest in Sew Fast as of November 17, 1995, when she filed an amended Chapter 11 bankruptcy application for Sew Fast. *Doc.* 22 at pgs. 1, 37. It is unclear whether she held this same interest when she filed her personal bankruptcy, in November 1996. However, the court is convinced that she held a majority of Sew Fast's shares when she filed for personal bankruptcy protection. *See Doc.* 21 at pg. 40 (noting majority ownership on October 14, 1997, close to one year after she filed for personal bankruptcy protection.)

3

Directors had the authority to determine what circumstances constituted bankruptcy or insolvency. *Id*.

The defendants never delivered the machines to Sew Fast. Instead, the defendants and Eddie Hamlet ("Hamlet"), one of the defendants in *Galbreath v. Hamlet*, met with Galbreath and informed her that the machines were being built for Hamlet and once the machines were completed the defendants intended to sell them to Hamlet. *Compl*., Ex. F. at pgs. 2 - 3. During this March 1995 meeting, Hamlet and the defendants also told Galbreath that they were going to obtain a patent on the machine. *Compl*. at pg. 3. On April 3, 1995, Galbreath filed an application for a patent on the fully automated bobbin winding machine. (Patent Number 5,603,461, Compl., Ex. A.) Three days later, Galbreath sent the defendants a letter, on behalf of Sew Fast, informing them that she had applied for a patent and warning them to discontinue production of additional bobbin winding machines. *Compl*., Ex. C. Over one year later, on May 5, 1996, Galbreath published a notice in a newspaper regarding her pending application on the bobbin winding machine. *Compl*., Ex. E - 1.

On November 18, 1996, Galbreath, in her individual capacity, filed for bankruptcy protection under Chapter 7. *See Doc*. 20. On her bankruptcy forms, which require the disclosure of all the

debtor's assets, Galbreath failed to disclose: 1) her interest in
the invention and patent application, 2) her already accrued
breach of contract and fraud claims, and 3) her interest in the
contingent patent infringement claims and related claims.  The
Patent Trademark Office ("PTO") accepted Galbreath's patent
application on February 18, 1997.  *Doc.* 20 at pgs. 57 - 79.  A
few days later the bankruptcy court released Galbreath from all
her debts, totaling $124,624.92. *See Doc.* 20 at pg. 2-A
(indicating that the discharge was signed on February 22 and
entered by the clerk on February 26).  It is unclear whether
Galbreath received the patent notice prior to her bankruptcy
discharge notice.  On March 10, 1997, Sew Fast sold the rights to
the invention and the now issued patent back to Galbreath for
$10.  *Doc.* 9, Ex. J-3.  Galbreath initiated the present action on
December 15, 1997.

## II.   SUMMARY JUDGMENT STANDARD

Under F.R.Civ.P. 56(c), summary judgment is appropriate
where "there is no genuine issue as to any material fact and ...
the moving party is entitled to a judgment as a matter of law."

### III. THE BANKRUPTCY CODE: DISCLOSURE
### OF DEBTOR'S PROPERTY INTERESTS

A long-standing tenet of bankruptcy law requires
one seeking benefits under its terms to satisfy a

5

> companion duty to schedule, for the benefit of
> creditors, all his interests and property rights.
> Section 521 of the current Bankruptcy Code outlines a
> non-exhaustive list of the debtor's duties in a
> bankruptcy case.  Foremost for our purposes, the debtor
> is required to "file a ... schedule of assets and
> liabilities ... and a statement of the debtor's
> financial affairs ...."  11 U.S.C. S 521(1) (1978).

*Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414,

416 - 17 (3rd Cir.) (alterations in original) (some citations

omitted), *cert. denied*, 488 U.S. 967, 109 S. Ct. 495 (1988).

"The importance of full disclosure is underlaid by the reliance

placed upon the disclosure statement by the creditors and the

court.  Given this reliance.... It has been specifically held

that a debtor must disclose any litigation likely to arise in a

non-bankruptcy contest." *Id*. at 417.  The debtor must also

disclose assets in the form of: 1) "[p]atents, copyrights,

licenses, franchises and other general intangibles," 2)

"[c]ontingent and unliquidated claims of every nature,"  3)

"[s]tock and interests in incorporated and unincorporated

companies," 4) "powers exercisable for the benefit of the

debtor," and 5) "property of any kind not otherwise scheduled."

*Doc*. 20 at pgs. 64 - 66 ¶ n, q, 5, v, b.


Once the debtor files for bankruptcy, a bankruptcy estate is

created which includes all the debtor's property interests.

*Krank v. Utica Mut. Ins. Co.*, 109 B.R. 668, 669 (E.D. Pa. 1990),

6

aff'd, 908 F.2d 962 (3rd Cir. 1990). *Accord In re Shoemaker*, 155 B.R. 552 (Bankr. N.D. Ala. 1992). The debtor's failure to disclose all of her property interests does not eliminate such property from the bankruptcy estate. Unscheduled or undisclosed property remains a part of the bankruptcy estate until it is administered or abandoned by the bankruptcy trustee. 11 U.S.C. §§ 554 (c) & (d). Thus, "[e]ven after the case is closed, the estate continues to retain its interests in unscheduled property." 5 *Collier On Bankruptcy*, ¶ 554.03 (15th ed. 1998). *See* 11 U.S.C. §§ 554(d).

Because Galbreath failed to disclose both her accrued claims (fraud and breach of contract) and her potential claims (patent infringement and related claims) to the bankruptcy court, defendants contend that she is judicially estopped from pursing these claims in the present proceeding. Galbreath counters by arguing that she was under no obligation to disclose these claims to the bankruptcy court.[3]

---

[3] Galbreath initially responded to the defendant's motion for summary judgment with a "Motion To Deny Defendants [sic] Motion For Summary Judgment." *See Doc.* 18. However, plaintiff's "motion" is merely her response to the defendants' brief, which they filed in support of their motion for summary judgment.

Galbreath also filed an untimely "Reply to Defendant [sic] Motion," on June 8, 1998. *See Doc.* 19. Defendants have not sought to strike the latter reply "brief," perhaps because Galbreath apparently failed to serve the defendants with the brief. *See id.* (showing Galbreath's unsigned certificate of service). However the court finds it unnecessary to, *sua sponte*, strike

### IV. GALBREATH HAD A DUTY TO DISCLOSE HER CLAIMS

### A. State Law Claims

Galbreath first asserts that her state law claims, which arose prior to her bankruptcy, were "voided" by the statute of limitations, therefore she had no viable claims to disclose. *Doc*. 18 at pg. 2 ¶5.  Galbreath appears to assert an Alabama state law claim for fraud, *Compl*. at pg. 1 ¶ 4, which has a two year statute of limitations,  Ala. Code § 6-2-3, and a claim for breach of contract, *Compl*. at pg. 1 ¶ 4, which has a six year limitations period.  *See McConico v. Romeo*, 561 So. 2d 523, 525 (Ala. 1990) (citing Ala. Code § 6-2-34(4)).


It is not clear from the record that the statute of limitations had expired when Galbreath filed for bankruptcy: While defendants did not duplicate the prototype invention in two to three weeks as promised, *Compl*. at pg. 1, there is evidence that the parties modified the original agreement over several months.  *See Compl*., Ex. F at pg. 2.  At one point Galbreath increased her order by ten additional machines and she appeared to allow defendants additional time to complete her order.  *See Compl*. at pg. 2.  It was not until March 1995 that the defendants met with Galbreath and definitively informed her that they

---

the latter reply brief because it raises no additional legal arguments.  It merely amplifies previously plead facts.

8

intended to misappropriate her machine and its design.    *Id*.
This meeting occurred less than two years before her November
1996 bankruptcy application.  *Compl*., Ex. F. at pgs. 2 - 3.   Thus
Galbreath may be able to show that the alleged fraud and breach
occurred within the two and six year limitations periods.
Because these claims accrued prior to Galbreath's bankruptcy,
they constitute assets, for purposes of the bankruptcy code, and
Galbreath had a duty to disclose the claims.  *In re Adam*
*Furniture Industries, Inc*., 191 B.R. 249, 255 (Bankr. S.D. Ga.
1996) ("To the extent the debtor had a cause of action at the
commencement of the case, the cause of action or claim by the
debtor against another is a legal interest of the debtor of the
type contemplated by § 541(a)(1) and therefore property of the
estate.") (*citing*, *inter alia*, *Miller v. Shallowford Community*
*Hosp., Inc*., 767 F.2d 1556 (11th Cir. 1985)).   Consequently,
Galbreath is unable to support her contention that she had no
viable contract or fraud claims.

## B. Galbreath's Interest In The Patent[4]

Galbreath also contends that she had no duty to disclose her
interest in the patent or her then potential patent infringement
claims, when she filed for bankruptcy.  Because Galbreath sold

---

[4]  For the remainder of this opinion, the court will use the term
"patent" to refer to the invention, the patent application, and the subsequent
patent, unless otherwise necessary for the sake of clarity.

the invention and patent rights to Sew Fast on January 5, 1995,
over one year before her November 1996 bankruptcy, she first
argues that she personally did not own the patent and therefore
had no asset to disclose to the bankruptcy court.

Galbreath's sale of the patent to Sew Fast did not eliminate
her duty to disclose her interest in the patent.  "[P]roperty of
the estate 'includes all interests, such as ... contingent
interests and future interests, whether or not transferable by
the debtor.'"  *In re Prudential Lines, Inc.*, 928 F.2d 565, 572
(2nd Cir. 1991) (alterations and omissions in original)(citing
H.R. Rep. No. 595, 95th Cong., 2d Sess., at 175-76 (1977),
*reprinted in* 1978 U.S.C.C.A.N. 5963, 6136).  The sales agreement
between Galbreath and Sew Fast specifically provided that the
patent reverted to her upon the occurrence of certain
contingencies.  *Doc.* 9, Ex. J-1.  Therefore, Galbreath held a
contingent interest in the patent and should have reported this
interest as an asset to be included in the bankruptcy estate,
despite her sale of the patent to Sew Fast.

Indeed, Galbreath's duty to disclose was particularly
compelling given the complete control she exercised over the
patent, even while held by Sew Fast.  Galbreath personally
retained the power to prevent Sew Fast from transferring the

10

patent to a third party. *Id*. In addition, as president, Board Chairperson and 100% shareholder of Sew Fast, Galbreath necessarily controlled the circumstances that would trigger her contingent rights; the patent reverted to Galbreath upon a declaration of bankruptcy or insolvency by Sew Fast. *Id*. Given such compelling facts, there is no doubt that Galbreath had a duty to report her interest in the invention and patent rights. *See* Doc 20 at pg. 66 ¶ b (requiring disclosure of "property of any kind not otherwise scheduled."); 11 U.S.C. § 541(a) (explaining that the bankruptcy estate includes all property "wherever located and by whomever held."); *United States v. One 1988 Prevost Liberty Motor Home*, 952 F. Supp. 1180, 1194 (S.D. Tex. 1996) (noting that the debtor committed bankruptcy fraud when he, *inter alia*, failed to disclose his pending patent application and his interest in the company which was the nominal owner of the product); *Anderson v. McGowan*, 128 B.R. 850, 853 (R.I. 1991)(noting that "the conditional, future, speculative, or equitable nature of the interest does not prevent it from becoming property of the bankruptcy estate"); *In re May*, 169 B.R. 462, 471 (Bankr. S.D. Ga. 1994) (noting that a reversionary interest is includable in the bankruptcy estate). *Cf*. *Patrick A. Casey, P.A. v Hochman*, 963 F.2d 1347, 1350 - 51 (10th Cir. 1992) (holding that an invention created and patented after the debtor filed for bankruptcy was not part of the bankruptcy estate)

11

In addition to Galbreath's interest in the patent, she also had a duty to disclose her contingent patent infringement claims. However, Galbreath argues that she had no such duty because the patent infringement claims did not become actionable until after she filed for bankruptcy. Moreover, points out Galbreath, Sew Fast did not sell the patent back to her until after the bankruptcy court discharged her debts. Thus, argues Galbreath, at the time of her bankruptcy she had no patent infringement claims to disclose.

This course of events does not excuse her failure to disclose. The bankruptcy forms specifically require that the debtor identify all <u>contingent</u> claims. *See Doc*. 20 at pg. 65 ¶ q. It is of no consequence that the patent infringement claims were not actionable, by Galbreath or Sew Fast, in November 1996 when she filed for bankruptcy protection. "It is the nature of a contingent interest that it may never take effect in possession because of the failure of the specified event to occur." *In re Ryerson*, 739 F.2d 1423, 1425 n.1 (9th Cir. 1984)(citations omitted)) "[By requiring disclosure of] all legal interests without exception, Congress indicated its intention to include [in the bankruptcy estate] all legally recognizable interests although they may be contingent and not subject to possession until some future time [if ever]. *Id*. at 1425 (citing H.R. Rep.

No. 595, 95th Cong., 1st Sess., at 175-76 (1977), *reprinted in*
1978 U.S.C.C.A.N. 5963, 6136.). *Accord Seigel v. Federal Home
Loan Mortgage Corp.*, ___ F.3d ___, ___, No. 97-55174, 1998 WL
216902, at * 7 (9th Cir. May 5, 1998); *In re Williams*, 197 B.R.
398, 402 (Bankr. M.D. Ga. 1996). Given this expansive definition
of a contingent claim, Galbreath is unable to show that she was
under no obligation to disclose her potential patent infringement
claims to the bankruptcy court.

As early as March 10, 1995, Galbreath was on notice that the
defendants intended to use her bobbin winding machine without her
permission. *Compl.*, Ex. F. at pgs. 2 - 3. At that time,
defendants, along with Eddie Hamlet, informed Galbreath that they
were going to duplicate her invention and seek a patent on the
machine. As a result of this conversation, Galbreath, as
president of Sew Fast, sent defendants a letter, informing them
that she had filed a patent application and warning them that she
intended to pursue legal action if they continued to use her
machine without her permission. *Compl.*, Ex. C. There is nothing
in the record to suggest that the defendants ever responded to
Galbreath's letter by refraining from their unauthorized use of
her invention. Indeed the nature of this lawsuit indicates that
the defendants continued their unauthorized use well past the
date of her bankruptcy.

13

Thus Galbreath was on notice that potential patent infringement claims existed. Given her contingent interest in the invention and patent rights, Galbreath cannot seriously complain that she lacked a disclosable contingent interest in the patent infringement claims. This was not a case were the contingent claim was "so weak that it 'hardly [rose] to the dignity of an expectancy ...." *Palmer v. Travelers Ins. Co.*, 319 F.2d 296, 299 (5th Cir. 1963)[5] (noting that some claims are so unlikely to become actionable that the debtor has no duty to disclose them). Indeed, except for the actual granting of the patent, Galbreath actually controlled all of the contingencies that triggered her ability to pursue the patent infringement claim in her individual capacity. Therefore Galbreath should have disclosed the contingent claims, as required by the unambiguous language found on the bankruptcy form. *See Doc*. 20 at pg. 65 ¶ q (requiring disclosure of "[c]ontingent and unliquidated claims of every nature ....").

Finally, the court notes that Galbreath also failed to disclose her 100% shareholder interest in Sew Fast. While it is true that Sew Fast filed for bankruptcy, *See Doc*. 22, and its

_____

[5] The Eleventh Circuit has adopted as precedent all Fifth Circuit Court of Appeals cases decided prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

14

assets were sold at a sheriff's sale prior to Galbreath's
personal bankruptcy, *Compl.*, Ex. H, it appears that the company
still existed in some form well after the bankruptcy court
discharged Galbreath's personal debts on February 26, 1997. *See*
*Doc.* 9, Ex. J-1 (declaring the company insolvent and transferring
the patent rights back to Galbreath on March 10, 1997); *Doc.* 21
at pg. 1 (indicating that Sew Fast filed for bankruptcy a second
time on October 14, 1997, almost one year after Galbreath's
individual bankruptcy, and noting discharge of the trustee
earlier this year on March 23, 1998.)  The bankruptcy forms
unambiguously provide that the debtor has a responsibility to
disclose "[s]tock and interests in incorporated and
unincorporated companies." *Doc.* 20 at pg. 65 ¶ t.  Whether or
not the company has little value or has filed bankruptcy is not
relevant for purposes of determining the debtor's duty to
disclose.  Thus Galbreath should have disclosed her interest in
Sew Fast, along with her contingent interest in the patent and
her contingent patent infringement claims.

## C. Galbreath's' Unfair Competition Claims

Galbreath makes an undefined federal claim for unfair
competition; a claim about which she was purportedly unaware when

15

she filed for bankruptcy.[6]  *See Doc.* 18 at pgs. 1 - 2, ¶ 4 - 6.
According to Galbreath, at the time of her bankruptcy, her
attorney advised her that she had no actionable patent related
claims against the defendants because no patent had yet issued.
*Id.* at pgs. 7 - 8.  Later Galbreath claims to have discovered
that she could pursue unfair competition claims for the
misconduct that occurred prior to the PTO's issuance of the
patent.  *Id.* at pg. 2.

Assuming, for the sake of argument, that this *pro se*
plaintiff can make out a prima facie case for unfair competition,
poor legal advice does not excuse her failure to disclose the
claim at the time of her bankruptcy.  The code specifically
requires disclosure of all legal claims and any non-disclosed
claims, even innocently non-disclosed claims, are still
considered a part of the bankruptcy estate.  Thus, if Galbreath
did have a viable unfair competition claim, when she filed for
bankruptcy, the undisclosed claim became a part of the bankruptcy
estate.  *See* 11 U.S.C. § 554(c) & (d).[7]

---

[6] Galbreath cites to 28 U.S.C. § 1338 in support of her unfair
competition claim.  However, this provision does not appear to support a cause
of action for such a claim.  Rather, § 1338 provides jurisdiction for this
court to consider such claims.

[7] Galbreath asserts additional claims for which she provides no
statutory citations: "unfair business practices," "breach of trust,"
"restraint of trade," "trade secrets" and "trespass on property."  *See Compl.*
at pg. 1.  Assuming these are viable claims, Galbreath should have disclosed

## D. Section 541 Analysis

Finally, Galbreath argues [8] she did not have a duty to disclose her interest in the patent or the patent claims because, pursuant to 11 U.S.C. § 541, said assets could not be considered the property of the bankruptcy estate. Section 541 excludes from the estate any power that the debtor may exercise <u>solely for the benefit of an entity other than the debtor</u>. Presumably Galbreath is arguing that she had the ability to exercise her power over the patent only for the benefit of Sew Fast. *See Doc*. 18 at pg. 5.

Galbreath's reliance on § 541 is misguided. According to Collier On Bankruptcy,

> [s]ection 541(b)(1) ... indicates that if the power in question may be exercised for the benefit of another entity, <u>but is capable of conferring benefit on the debtor also, it becomes property of the estate</u>. An example of a power which would not become property of the estate would be afforded by a special power of appointment or by a deed which contained a clause reserving in the debtor grantor the right to revoke the grant and <u>transfer the property to certain designated third persons other than for the grantor's own use</u>."

¶ 541.19, pg. 73(emphasis supplied).

---

these to the bankruptcy court along with her other claims.

[8] Galbreath does make additional arguments that the court declines to address because they are meritless. *See Doc*. 18 at pgs. 4 - 6 (arguing: (1) that a patent is not property, but instead constitutes a "right," which a debtor has no obligation to disclose on her bankruptcy forms, and (2) that any required disclosure of such "rights" on the bankruptcy forms unlawfully abridges the debtor's "rights.").

17

Unlike the example provided in Collier's, Galbreath had the ability to exercise her power over the patent for her own benefit.  First, Galbreath maintained the power to prevent Sew Fast from transferring the patent to a third party.  In addition, as the president, Board Chairperson, and 100% shareholder of her business, Galbreath exercised power over whether Sew Fast transferred the patent back to her in her individual capacity. Thus Galbreath has failed to show that she was not capable of benefiting from her exercise of power over the patent. Consequently, § 541 does not exempt her contingent interests from the bankruptcy estate.  Indeed, Galbreath had an obligation to disclose the powers she maintained over the patent under paragraph "v" on the bankruptcy disclosure form, which requires disclosure of all "powers exercisable for the benefit of the debtor ...."  *See Doc*. 20 at pg. 65 ¶ v.   Thus Galbreath has failed to provide sufficient legal basis to support her non-disclosure of the patent, the contract and fraud claims, as well as the patent infringement claim and related claims.

## V. STANDING

Given Galbreath's non-disclosure, the present lawsuit cannot go forward.  Galbreath does not have standing to pursue her claims.  *See In re Price*, 173 B.R. 434, 439 - 40 (Bankr. N.D. Ga.

1994) (citing *Miller v. Shallowford Community Hosp., Inc.*, 767
F.2d 1556, 1559 (11th Cir. 1985)); *Krank*, 109 B.R. 668;
*Rosenshein v. Kleban*, 918 F. Supp. 98, 102 - 3 (S.D.N.Y. 1996);
*Greenhart Durawoods, Inc. v. PHF Int'l. Corp.*, No. 91 Civ. 3731
(AGS), 1994 WL 652434, at * 5 (S.D.N.Y. 1994); *In re Drexel
Burnham Lambert Group, Inc.*, 160 B.R. 508, 514 (S.D.N.Y. 1993);
*Winmark Ltd. Partnership v. Miles & Stockbridge*, 693 A.2d 824,
827 - 31 (Md. 1997); *Adams v. Manown*, 615 A.2d 611, 617 - 20
(Md. 1992). Galbreath's interest in the patent, along with her
accrued and contingent claims, automatically became a part of the
bankruptcy estate once she sought Chapter 7 protection, despite
Galbreath's non-disclosure. *Krank*, 109 B.R. at 669. *Accord In
re Shoemaker*, 155 B.R. 552.

> Once a cause of action becomes the property of the
> estate, the debtor may not bring suit on that action
> unless the property has been abandoned by the trustee.
> If a trustee chooses to abandon a claim or is ordered
> to do so, the debtor may assert title to the cause of
> action and bring suit upon it. <u>If, however, the debtor
> fails to list a claim as an asset, the trustee cannot
> abandon the claim because he or she will have had no
> opportunity to determine whether it will benefit the
> estate. In such circumstances, the debtor may not
> claim abandonment and seek to enforce the claim after
> discharge</u>.... Instead, the debtor must petition the
> bankruptcy court to reopen proceedings to allow that
> court to decide whether the trustee should enforce the
> claim for the benefit of creditors or abandon it.

*Krank,* 109 B.R. at 669 (citing, *inter alia*, *First National Bank*

*v. Lasater*, 196 U.S. 115, 119, 25 S. Ct. 206, 208 (1905))
(emphasis supplied). *See* 11 U.S.C. § 350(b) (allowing the
reopening of a bankruptcy case); 11 U.S.C. § 554(d) ("Unless the
court orders otherwise, property of the estate that is not
abandoned ... and that is not administered in the case remains
property of the estate.") Accordingly, Galbreath must petition
the bankruptcy court to reopen her case and must request that the
bankruptcy trustee, who has standing, pursue her claims.

However, it still remains for this court to decide what
happens if the bankruptcy trustee abandon's Galbreath's claims.
If the bankruptcy trustee chooses such a course of action then
standing principles will no longer prevent Galbreath from
pursuing her claims. Is Galbreath, as the defendants urge,
judicially estopped from bringing her claims should the
bankruptcy trustee abandon them?

### VI. JUDICIAL ESTOPPEL

#### A. Patent Infringement Claim and Related Claims.

In the Eleventh circuit, "[j]udicial estoppel is applied to
the <u>calculated</u> assertion of divergent sworn positions. The
doctrine is designed to prevent parties from making a mockery of
justice by inconsistent pleadings." *American Nat. Bank of*

*Jacksonville v. Federal Deposit Ins. Corp.*, 710 F.2d 1528, 1535
(11th Cir. 1983) (emphasis supplied) (citing *Johnson Service Co.
v. TransAmerica Ins. Co.*, 485 F.2d 164, 175 (5th Cir. 1973))   The
Eleventh Circuit's use of the adjective "calculated" denotes a
requirement that the actor made the divergent sworn positions in
bad faith.   *See Sumner v. Michelin North America, Inc.*, 966 F.
Supp. 1567, 1579 - 1580 (M.D. Ala. 1997); *Morro v. City of
Birmingham*, 926 F. Supp. 1033, 1040 - 41 (N.D. Ala. 1996), *aff'd*,
117 F.3d 508 (1997), *cert. denied*, ___ U.S. ___, 118 S. Ct. 1299
(1998).   There is no question that Galbreath's present position
diverges from the representations Galbreath made on her
bankruptcy disclosure statement.   Thus this court must "make a
fact-sensitive determination of the true circumstances
surrounding the plaintiff's averments ... to decide whether the
plaintiff intended to mislead, or otherwise proceeded in bad
faith."   *Sumner*, 966 F. Supp. at 1580.   At the same time, the
court must be mindful that "judicial estoppel ought to be applied
with caution."   *Krank*, 966 F. Supp. at 1578.

Even viewing the facts in the light most favorable to the
plaintiff, as the court must do at the summary judgment stage,
the facts in the present case support a finding of bad faith, to
the extent Galbreath asserts patent infringement and related

claims.[9]   Because she held a contingent interest in the patent,
she also held an interest in the contingent patent infringement
claims.   The bankruptcy financial disclosure forms unambiguously
provide that the debtor must disclose "contingent and
unliquidated claims of every nature ...."   *Doc* 20 at pg. 65 ¶ q.


     While Galbreath accurately contends that no actionable
patent infringement claims existed when she filed for bankruptcy,
her own admissions show that she was aware of the contingent
nature of such claims.   Galbreath repeatedly describes the patent
infringement claims by using terms that show contingencies.
Galbreath writes in her filings:

> "It was possible that there would never be a patent,
> and if and when it issued it could take 5 to 7 years."

> "Any possible potential claims is [sic] explained on
> page 8."

> "A claim would only arise when and if, maybe in 2 to 6
> years and then only if defendant had actually infringed
> the issued patent after it issued."

*Doc*. 18 at pg. 3; *Doc*. 19 at pg. 1.

---

[9]   As previously noted, Galbreath also asserts claims for "unfair
competition," "unfair business practices," "breath of trust," "restraint of
trade," "trade secrets" and "trespass on property."   The court finds that
Galbreath is also judicially estopped from asserting any of these patent
related claims.

These statements show that Galbreath was fully aware that
potential patent infringement claims existed when she filed for
bankruptcy.  Thus she should have known that her potential claims
constituted "contingent" claims.  The word "contingent" is not a
legal term, nor is it difficult for a person with Galbreath's
background to comprehend.  Galbreath is an accountant, recognized
by the Internal Revenue Service as an enrolled agent.  *Doc.* 22 at
pg. 66.  She is also an inventor, whose ingenuity the PTO has
twice recognized with patents.   *See Doc.* 18 at pg. 2 (describing
Galbreath's earlier patent for the "universal bobbin").    In
addition to these professional accomplishments, Galbreath served
as president of Sew Fast.  In that capacity she negotiated
contracts on behalf of the company, *See Compl.* at pg. 2; *Compl.*
Ex. F at pg. 1, and attempted to protect the interest Sew Fast
temporarily held in the patent by publishing a public notice,
sending cease and desist letters and suing alleged trademark
infringers, *pro se.*  *Compl.* Ex. E-1; Ex. C.  Finally, while
preparing for an anticipated corporate bankruptcy, the Sew Fast
Board of Directors described Galbreath as a "professional person
well qualified to take any and all actions necessary to comply
with the Bankruptcy Court."   *Doc.* 21 at pg. 38.   With
Galbreath's background, she certainly should have understood the
bankruptcy form's use of the phrase "contingent claims."
Moreover, Galbreath's filings, in connection with a Sew Fast

23

bankruptcy, indicate that she fully understood that potential claims do have some value in a bankruptcy context. Galbreath sought to decrease Sew Fast's exposure to its bankruptcy creditors by disclosing the contingent patent infringement claims. Galbreath, not Sew Fast's attorney, disclosed to the court that "[t]he Bill Major debt is subject to patent infringement when patent for fully automatic Bobbin Winding machine issues." *Doc*. 22 at pg. 65.

While Galbreath asserts that she relied on her attorney's advice when completing her individual bankruptcy forms, *Doc*. 18 at pgs. 7 - 8, there is no evidence that Galbreath's attorney advised her to withhold information regarding her contingent interest in the patent or her contingent claims. Even if the attorney had advised her to do so, a person with Galbreath's background could not have reasonably relied on such legal advice, particularly when Galbreath admits that the attorney was not familiar with bankruptcy law. *Id*.

Finally, there are two additional facts which persuade the court that Galbreath's non-disclosure of her contingent patent infringement claims was undertaken in bad faith. First, Galbreath published an advertisement in which she made a distinction between the owner and the user of her invention:

24

> The winding machines <u>owned by Louise Galbreath</u>, <u>being</u>
> <u>used by Sew Fast Products, Inc</u>. are covered by "Patent
> Pending ...."   The patent owner has the "Exclusive
> right to prevent other persons from using, making or
> selling specimens of the invention."

*Compl*. Ex. E-1.  Galbreath published this "public notice" on May

9, 1996, over one year <u>after</u> she purportedly sold the invention

and patent rights to Sew Fast.  Second, Galbreath failed to

disclose her 100% shareholder interest in Sew Fast.  A party who

conducts herself so as to conceal information, such as her

ownership of a corporation, from which the bankruptcy court might

discover the existence of contingent claims, is judicially

estopped from later pursuing those same claims.  *See Morro*, 926

F. Supp. at 1040 - 41 (citing *Texas Co. V. Gulf Refining Co*., 26

F.2d 394, 397 (5th Cir. 1928), *cert. denied*, 278 U.S. 625, 49 S.

Ct. 27 (1928)).

## B. Breach of Contract and Fraud Claims

The court is not persuaded, however, that bad faith exists

to the extent that Galbreath makes state law claims for breach of

contract and fraud.  According to Galbreath, her attorney

informed her that the statute of limitations had expired on her

these claims.  *Doc*. 19 at pgs. 1 - 2.  Sometime thereafter,

Galbreath apparently discovered that the attorney gave her this

legal advice while working for the defendants in this case.

*Doc*. 18 at pg. 8; *Doc*. 19 at pgs. 1 - 2.  Consequently, Galbreath

is pursuing malpractice and conflict of interest claims against
the attorney.   *Doc*. 18 at pg. 8.   Moreover, as discussed above,
it appears that the statute of limitations had not actually
expired on Galbreath's claims when she filed for bankruptcy.

Given these facts, the court is not willing to find, as a
matter of law, that Galbreath knew or should have known that her
breach of contract and fraud claims were viable when she filed
for bankruptcy.   It is not at all clear, from the record, when
the statute of limitations began to run on Galbreath's claims.
Such issues cause disputes even among licensed attorneys.
Therefore, it would not be unusual for a non-attorney, even
though she is a knowledgeable business woman, to reasonably
believe her attorney's advice that the statute of limitations had
expired and therefore she could no longer pursue her fraud and
breach of contract claims.   Because the facts, as they relate to
these claims, do not support a finding of bad faith, the court is
unwilling to determine, upon a motion for summary judgment, that
Galbreath is judicially estopped from asserting her breach of
contract and fraud claims, should the bankruptcy trustee abandon
them.

### VII.   ISSUE PRECLUSION

As a fall-back argument, the defendants assert that issue

preclusion doctrines mandate application of judicial estoppel to all of Galbreath's claims. Defendants argue that the court's application of judicial estoppel in *Galbreath v. Hamlet*, CV-97-S-3051-M, necessitates this court's application of the same doctrine. In *Hamlet*, Galbreath asserted claims of copyright infringement, unfair competition and breach of fiduciary duty, after Hamlet allegedly advertised certain products using Galbreath's copy-written advertising language. The court found that Galbreath was judicially estopped from going forward with her claims because she had failed to disclose her interest in the copyright when she filed for bankruptcy. As in the present case, Galbreath sold the protected advertising language and her rights under the copyright to Sew Fast, prior to filing for bankruptcy. *Hamlet* is also similar to the present case in one other important respect. In *Hamlet*, Galbreath maintained the same contingent reversionary rights to the non-disclosed assets as she did in the present case and those rights reverted to her after her bankruptcy discharge. Considering these nearly identical facts, the defendants argue that this court is bound by the *Hamlet* decision pursuant to issue preclusion theories.

The court determines that issue preclusion theories are not implicated in the present case. Issue preclusion or

collateral estoppel precludes the relitigation of an
issue that has already been litigated and resolved in a
prior proceeding.  To claim the benefit of [this
doctrine] the party relying on the doctrine must show
that: (1) the issue at stake is identical to the one
involved in the prior proceeding; (2) the issue was
actually litigated in the prior proceeding; (3) the
determination of the issue in the prior litigation must
have been "a critical and necessary part" of the
judgment in the first action; and (4) the party against
whom collateral estoppel is asserted must have had a
full and fair opportunity to litigate the issue in the
prior proceeding.

*Pleming v. Universal-Runle Corp.*, No. 97-8170, ___ F.3d. ___,
1998 WL 295840, at * 5 (11th Cir. 1998) (emphasis supplied and
citations omitted).

Applying this standard, issue preclusion theories do not
require that this court judicially estop Galbreath from asserting
all of her claims.  First, both this court and the *Hamlet* court
reached the same conclusion regarding application of judicial
estoppel to Galbreath's infringement claims.  On the other hand,
the bankruptcy court trustee's standing to pursue Galbreath's
claims is an issue that was never litigated in *Hamlet*.  Thus,
issue preclusion principles do not apply to this court's
conclusions on the bankruptcy court trustee's standing.

Finally, issue preclusion principles do not apply to this
court's treatment of Galbreath's contract and fraud claims

28

because those claims present issues which were not litigated in the prior proceeding. Galbreath asserts claims related to the defendants' agreement to manufacture duplicates of Galbreath's fully automated bobbin winding machine. In addition, Galbreath contends she did not disclose her contract related claims because her attorney advised her that the state law claims were time barred. The court in the prior proceeding was not faced with facts similar to those surrounding Galbreath's contract related law claims, nor did the court address the issue of bad faith. Consequently, the judicial estoppel finding in *Hamlet* does not foreclose a contrary finding by this court, inasmuch as Galbreath asserts contract and fraud claims. Accordingly, the defendants' issue preclusion defense must fail.

## VIII. CONCLUSION

The court determines that, at the time of her bankruptcy, Louise Galbreath had a duty to disclose her contingent interest in the fully automated bobbin winding machine, the then pending patent application, the accrued contract and fraud claims, the contingent patent claims and her shareholder interest in Sew Fast. As a consequence of her non-disclosure, she presently has no standing to pursue those claims. Thus, she should seek to have her bankruptcy case re-opened and request that the bankruptcy trustee pursue her claims. Should the bankruptcy

29

trustee abandon her claims, she will have standing to sue.
However, because the facts, even as characterized by the
plaintiff, indicate that her non-disclosure of the patent related
claims was undertaken in bad faith she is judicially estopped
from pursuing such claims. The court is unable to find, as a
matter of law, that Galbreath is judicially estopped from
asserting her contract and fraud claims. Given the court's
disposition of the substantive claims, Galbreath's motion to
amend the scheduling order is moot.

A separate appropriate order will be entered.

DONE this ___14th___ day of July, 1998.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE